**O**

# United States District Court
# Central District of California

| | |
|---|---|
| JORGE AVILA, | Case No. 2:13-cv-03570-ODW(JCGx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [27]** |
| CITY OF SANTA MONICA, SCOTT MATSUDA, GEORGE MENDEZ, SCOTT McGOWAN, MARILYN AMIACHE and Does 1-10, inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Jorge Avila brought this civil-rights action after an altercation with the Santa Monica Police Department (SMPD), during which he was punched repeatedly and tased four times by arresting officers.  In his Complaint, Avila alleges various civil rights violations, as well as state-law claims.  (ECF No. 1.)  On March 3, 2014, Defendants moved for summary judgment on Avila's negligence and *Monell*-liability claims.  (ECF No. 27)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion.

/ / /

## II.   FACTUAL BACKGROUND

At approximately midnight on April 6, 2012, Officer Matsuda drove his patrol car into a 7-11 store parking lot located at 630 Wilshire Boulevard, in Santa Monica, California.  (Matsuda Depo. 16:17–20.)  While in the parking lot, Officer Matsuda observed a homeless individual—later identified as Lamont Amaker—pouring the contents of a beer can into a 7-11 coffee cup.  (Matsuda Depo. 16:18–20; Avila Depo. 72:19–25.)  Officer Matsuda approached Amaker to investigate.

While Officer Matsuda was speaking to Amaker, Avila walked through the parking lot on the way to his car, which was parked on the street adjacent to the 7-11.  (Avila Depo. at 61:14–16; 72:19–25.)  Avila observed what appeared to be Officer Matsuda "harassing" Amaker.  (Avila Depo. 72:19–21)  Avila approached them and asked Amaker if he needed any assistance.  (Matsuda Depo. 28:7–11.)  Amaker responded that he was fine and Officer Matsuda asked Avila to keep moving.  (Avila Depo. 75:2–5; 76:9–12: Matsuda Depo. 31:12–14.)  After a time, Avila began to walk away.  (Matsuda Depo. 28:22–24, 31:2–9.)

Officer Matsuda formed the opinion that Avila was under the influence of alcohol, and unable to care for himself, in violation of California Penal Code 647(f) (Public Intoxication).  (Matsuda Depo. 34:1–4.)  Officer Matsuda attempted to arrest Avila and a struggle ensued.  (Matsuda Depo. 59:13–15, 17–20.)  During the struggle Matsuda struck Avila in the face several times with his fist and deployed his taser four times.  (Matsuda Depo. 63:22–24, 64:4–5, 83:9–11.)  Shortly thereafter, Officers Mendez, McGowan and Amiache arrived at the scene and assisted in handcuffing Avila.  (Matsuda Depo. 116:6–9.)  The officers put Avila in hobble leg restraints and placed him in the patrol car.  (Matsuda Depo. 119:2–16.)  The officers never performed a blood-alcohol test on Avila.  (Matsuda Depo. 32:7–9.)

Avila was charged with public intoxication, obstruction of justice, and resisting arrest.  *People v. Jorge Luis Avila*, No. 2WA22265 (L.A. Cnty. Super. Ct., filed April 24, 2012).  The charges were ultimately dismissed.  On September 28, 2012, Avila

moved for a Finding of Factual Innocence under California Penal Code section 851.8(e).  (ECF No. 28, Ex. G.)  His motion was granted and his arrest records were sealed under California Penal Code section 851.8(c).  (*Id.*)

Avila filed a tort claim—a prerequisite to filing suit mandated by California law—with the City on October 3, 2012.  (ECF No. 27, Ex. B.)  Avila's tort claim describes the incident:

> On April 6, 2012, SMPD Officer S. Matsuda seized and arrested Mr. Avila without probable cause and caused him to be subject to criminal prosecution based on false information and evidence, and in retaliation for exercising his First Amendment rights. Officer Matsuda used excessive force in effecting the unlawful arrest, as he assaulted, kicked, punched Mr. Avila about the head, threw Mr. Avila to the ground and Tased him numerous times. Other officers participated in the assault and arrest and may have used excessive force in doing so.

Avila's description of the injury continues: "Mr. Avila suffered trauma to his face and body as a result of the assault and tazing (sic). He suffered both emotional injuries and potentially nerve damage as demonstrated by numbness in and about his body."

On May 17, 2013, Avila filed suit against the officers involved and the City alleging section 1983 claims of excess force, false arrest and malicious prosecution, failure to intervene, and *Monell* liability, as well as state-law claims of intentional infliction of emotional distress, battery, false arrest, false imprisonment, and negligence.  (ECF No. 1)

### III.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the

1  pleadings and identify specific facts through admissible evidence that show a genuine
2  issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in
3  affidavits and moving papers is insufficient to raise genuine issues of fact and defeat
4  summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.
5  1979).

6         A genuine issue of material fact must be more than a scintilla of evidence, or
7  evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*,
8  198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the
9  resolution of that fact might affect the outcome of the suit under the governing law.
10 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if
11 the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving
12 party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts
13 are required to view the facts and draw reasonable inferences in the light most
14 favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.   DISCUSSION

16        Defendants now move for summary judgment of Avila's negligence and
17 *Monell*-liability claims.   Defendants contend that they are entitled to summary
18 judgment on Avila's negligence claim because the tort claim that Avila filed with the
19 City did not reference negligence.   Defendants further assert that Avila has proffered
20 no evidence that a City custom or practice caused his alleged constitutional violations.
21 The Court considers each in turn.

**A.   Negligence**

23        The California Tort Claims Act, now referred to as the Government Claims Act
24 (GCA),[1] requires an injured party to file a tort claim prior to filing suit for damages
25 against a public entity.   Cal. Gov't Code § 945.4.   The tort claim must include the

---

[1] The Ninth Circuit now refers to the claims statutes as the "Government Claims Act." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1124 n.6 (9th Cir. 2013).

"date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide a "general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."   Cal. Gov't Code § 910(c)–(d).   The injured party must file the tort claim with the public entity within six months of the accrual of the claim.   Cal. Gov't Code § 911.2.

If a tort claim is rejected and the injured party subsequently files a complaint against the public entity, the facts supporting each cause of action alleged in the complaint must have been fairly reflected in the tort claim.   *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004).   Additionally, when a plaintiff relies on more than one theory of recovery against the public entity each cause of action must have been reflected in the tort claim.   *Fall River Joint Unified Sch. Dist. v. Super. Ct.*, 206 Cal. App. 3d 431, 434 (1988)

The primary purpose of the GCA is to provide the public entity sufficient notice and information to investigate and evaluate the tort claim.   *Phillips v. Desert Hosp. Dist.,* 49 Cal. 3d 699, 705 (1989).   Consequently, a claim need not contain the detail and specificity required of pleadings, but rather need only "fairly describe what [the] entity is alleged to have done."   *Shoemaker v. Myers,* 2 Cal. App. 4th 1407, 1426 (1992).   The GCA "should not be applied to snare the unwary where its purpose has been satisfied." *Elias v. San Bernardino Cnty. Flood Cont. Dist.,* 68 Cal. App. 3d 70, 74 (1977).

Defendants argue that Avila's tort claim is deficient because it only alleges that the officers used excessive force in effectuating his arrest.   Defendants contend that because Avila did not specifically reference negligence as a theory of recovery in his tort claim, he is now foreclosed from pursuing any negligence-based state claims. Avila responds that his tort claim inherently included a negligence cause of action based upon his excessive force theory.   The Court agrees with Avila that his tort claim was sufficient under the GCA to give the City notice of his negligence theory.

/ / /

1    Avila's allegations of excessive force in his tort claim were more than sufficient

2    to enable defendants to investigate whether the officers were negligent in their

3    application of force.  By notifying the City of the act (excessive force) that caused his

4    injury (nerve damage) and naming the officers he believed were responsible, Avila's

5    claim provided sufficient information for the City to investigate and evaluate its

6    merits.  The additional negligence theory is based on identical facts, and the alleged

7    liability is based on the same wrongful acts.  Indeed, accepting the allegations of

8    excessive force as true, the Officers necessarily could only have either intentionally or

9    negligently applied that excessive force.  Thus, the general excessive-force claim can

10   be reasonably read to encompass both intentional and negligent acts on the part of the

11   officers involved.

12   Other courts have similarly found that a complaint fairly reflects the tort claim

13   where the complaint is predicated on the same essential facts that give rise to distinct

14   theories of recovery.  For example, in *White v. Superior Court*, 225 Cal. App. 3d 1505

15   (1990), White submitted a tort claim that stated that a police officer had falsely

16   arrested and beaten her.  *Id.* at 1507.  White ultimately filed a complaint against the

17   city alleging causes of action for negligent hiring, training and retention, and

18   intentional failure to train, supervise, and discipline officers.  *Id.*  The city argued that

19   these causes of action were not fairly reflected in the tort claim filed with the city.  *Id*.

20   at 1508.  The court rejected this argument because both the complaint and the claims

21   were predicated on the same essential facts—the officer's alleged mistreatment of the

22   plaintiff.  *Id*. at 1511.

23   The California Supreme Court upheld the rule espoused in *White* in *Stockett v.*

24   *Ass'n of Cal. Water Agencies Joint Powers Ins Authority*, 34 Cal. 4th 411 (2004).  In

25   *Stockett*, the plaintiff brought additional theories of recovery in the complaint that

26   were not explicitly delineated in the tort claim, but were based on the same factual

27   foundation.  *Id.* at 444–45.  The Court found that the claim provided sufficient

28   / / /

1   information to allow the public agency to investigate the merits of the tort claim.  *Id.*
2   at 448–450.

3        In contrast, there is insufficient information for a public agency to investigate a
4   tort claim when liability is alleged on an entirely different factual basis from that
5   stated in the tort claim.  In *Fall River v. Superior Court*, 206 Cal. App. 3d 431 (1988),
6   the plaintiff was injured at school when a steel door struck his head.  *Id.* at 434.  His
7   tort claim stated that the injury was caused by the school's negligent door
8   maintenance, but the subsequent complaint additionally alleged that the school was
9   negligent in student supervision.  *Id.*  There, the court found that negligently
10   maintaining a structural or mechanical condition was not the factual equivalent of
11   "failing to halt forbidden student horse-play.  *Id.* at 435.

12        Here, as in *Stockett*, Avila's negligence theory is based on the same factual
13   foundation as his excessive force claim.   In comparing the tort claim and the
14   Complaint, the Court is mindful of the California Supreme Court's admonition that
15   "So long as the policies of the claims statutes are effectuated, [the statutes] should be
16   given a liberal construction to permit full adjudication on the merits."  *Stockett*, 34
17   Cal. 4th at 449.  Accordingly, the Court concludes that Avila's negligence theory was
18   fairly reflected in the tort claim filed with the City.  The Court therefore **DENIES**
19   Defendants' Motion with respect to Avila's negligence claim.

20   **B.**   ***Monell* liability**

21        Section 1983 provides for a civil action against any person who, under color of
22   law, causes the "deprivation of any rights, privileges, or immunities secured by the
23   Constitution and laws."  42 U.S.C. § 1983.  While the statute does not define "person"
24   or address whether a governmental unit may be sued under its provisions, the United
25   States Supreme Court in *Monell* held that a local government may be sued under
26   section 1983 "when execution of a government's policy or custom, whether made by
27   its lawmakers or by those whose edicts or acts may fairly be said to represent official
28   policy, inflicts the injury."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

But a plaintiff may not sue a governmental unit under section 1983 simply based on a *respondeat superior* theory. *Id.* at 691.

To hold a municipality liable for the actions of its officers and employees, the alleged constitutional violation "must be caused by 'a policy, practice, or custom of the entity,' . . . or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (internal citation omitted). A policy is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Id.* at 1143. A policy may be one of action—where the municipality itself violates constitutional rights or directs its employees to do so. *Id.* Alternatively, a policy may be one of inaction based on either (1) a failure to implement procedural safeguards, such as adequate training, to prevent constitutional violations, or (2) ratification—a policymaker's failure to take remedial steps after the violations. *Id.*; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

To establish a policy based on a failure to implement procedural safeguards, a plaintiff must show (1) a constitutional violation, (2) that the policy amounts to deliberate indifference to the constitutional right, and (3) that the policy caused the violation because a municipality could have prevented it with an appropriate policy. *City of Canton v. Harris*, 489 U.S. at 378, 388 (1989); *see also Tsao*, 698 F.3d at 1143. These heightened requirements are necessary to avoid imposing *respondeat superior* liability, in violation of *Monell*. *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403–04 (1997). Without rigorous state-of mind requirements, any time a "municipal employee commits a constitutional tort[] it could always be alleged that a municipality failed to enact a policy that would have prevented the tort." *Tsao*, 698 F.3d at 1143–44.

/ / /

/ / /

8

Ratification can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). Such actions can be considered representative of coordination of and acquiescence in the act. *Gomez*, 255 F.3d at 1127.

At the outset the City aggressively argues that Avila has failed to adequately plead a *Monell* claim against the City. The City urges the Court to dismiss the *Monell* claims with prejudice. Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss for failure to state a claim must be made before a responsive pleading . Defendants answered on August 12, 2013—thus Defendants' argument is untimely at best. (ECF No. 6.) Defendants had sufficient time to file a motion to dismiss Avila's Complaint, but failed to do so. They cannot raise a pleading argument at this late hour.

As an alternative, the City asserts that Avila has proffered no evidence that the City has a policy, custom, or practice which caused Avila's alleged constitutional violations. Avila contends that the City has ratified, or was deliberately indifferent to, customs and practices which permit and encourage its deputies to employ unlawful practices—such as excessive force, illegal searches and seizures, and false arrests—in violation of the Fourth and Fourteenth Amendments. (Compl. ¶¶ 46–47.) Avila alleges that the City's Police Department did not discipline, prosecute, or investigate "known incidents and complaints of false arrests, falsification of evidence, the preparation of false police reports . . . [and] the related claims and lawsuits brought as a result . . . ." (Compl. ¶ 50.)

As evidence of this alleged ratification or indifference, Avila points out that the criminal case brought against him after the incident was later dismissed and that his criminal records were sealed. Avila also contends that the City ratified Officer Matsuda's conduct when it took no action against Officer Matsuda after an internal

/ / /

investigation of the incident.  (*Id.*)  But neither of these facts provide support for Avila's ratification and indifference theories.

First, the fact that the criminal case brought against Avila was ultimately dismissed is not evidence of the City's indifference to the alleged constitutional violations.  Avila's theory is tenuous at best: he asserts that because the criminal action was ultimately dropped, and he was later declared "factually innocent,"[2] he was categorically innocent of the charges.  Therefore, Avila argues, the defendant officers made an unlawful false arrest, which was permitted by the City.  But California Penal Code section 851.8(i)(1) clearly states that "[a]ny finding that an arrestee is factually innocent . . . shall not be admissible as evidence in any action."  Moreover, the dismissal of criminal charges does not mean that Avila's arrest was unlawful.  Avila has proffered no admissible evidence that the officers filed false charges, made false statements, prepared false reports, or falsified or manufactured evidence.

Second, although Avila contends that the SMPD initiated an internal investigation of the incident, Avila has not proffered any evidence to this effect.[3]  Even if such an investigation did in fact occur, Avila has still provided no evidence as to the City's motivation for the investigation, any discoveries made, or the disposition thereof.  Moreover, if the SMPD did in fact investigate the incident, this does not evidence deliberate indifference to Avila's alleged constitutional violation.  Indeed, such an investigation contradicts Avila's allegation that the SMPD does not "investigate or in any other way, deal with or respond to known incidents and

---

[2] California Penal Code section 851.8(c) provides that "In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made."

[3] Although Avila cites to Officer Matsuda's deposition testimony as evidence of the supposed internal investigation and "exoneration" of Officer Matsuda, this deposition testimony is conspicuously absent from the evidence presented to the Court.  Equally vexing, the City attempts to rebut this alleged testimony by pointing to the specifics of Officer Matsuda's testimony—evidence of which it too does not bother to provide. The "facts" and "evidence" provided to the Court with the parties' papers are woefully deficient.

1   complaints of false arrests [or] falsification of evidence . . . [or] the related claims and

2   lawsuits . . . ."  (Compl. ¶ 50.)

3          For all the accusations alleged in his Complaint, Avila has not proffered any

4   admissible evidence of the City's practices that have caused his constitutional

5   violations.  For example, in *Hunter v. County of Sacramento*, 652 F.3d 1225, 1227–28

6   (9th Cir. 2011), the plaintiffs submitted an expert declaration from a former employee

7   and Lieutenant of the Sherriff's Department.  The Lieutenant declared that "there were

8   40 to 50 'major incidents' of excessive force" during the relevant time period, " the

9   jail repeatedly failed to investigate the incidents, discipline the guards, or take other

10  action to address the problem," and "in his experience, an internal investigation should

11  have been opened when [an] inmate [ ] suffered a fractured nose and hand after being

12  thrown to the ground and having his wrists restrained by five deputies, none of whom

13  were injured in the altercation."  *Id.*  The Court found that this evidence created a

14  material issue of fact as to whether the county had a custom or practice of using

15  excessive force despite its written policies prohibiting such conduct.  *Id.* at 1228.

16  Here, Avila has failed to provide similar, admissible evidence.

17         Accordingly, there is no evidence that creates a material issue of fact as to

18  whether the City has a practice or custom that caused Avila's alleged constitutional

19  violations.  *Monell* erects a high barrier against the City's liability in this case.  Avila's

20  conclusory allegations fail to surmount that hurdle at this summary-judgment stage.

21  The Court therefore finds that the City bears no section 1983 liability in this case, and

22  **GRANTS** Defendants' Motion with respect to Avila's *Monell* claim.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# V.   CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment on Avila's negligence claim is **DENIED**.  Defendants' Motion for Summary Judgment with respect to Avila's *Monell* claim is **GRANTED**.

**IT IS SO ORDERED.**


April 7, 2014


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**